**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RAED AL-KHADER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08-C-955 |
| | ) | |
| SERFILCO, LTD., | ) | Judge Nordberg |
| | ) | Magistrate Judge Brown |
| Defendant. | ) | |

**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO
PLAINTIFF'S AMENDED COMPLAINT**

Defendant SERFILCO, LTD. ("Serfilco"), by and through its attorneys, Jackson Lewis LLP, answers Plaintiff Raed Al-Khader's ("Al-Khader" or "Plaintiff") Amended Complaint as follows:

**PARAGRAPH NO. 1:**

Plaintiff Raed Al-Khader ("Mr. Al-Khader") seeks redress for religion, national origin, and ancestry discrimination, harassment, and retaliation. This case is brought for relief pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.*, as amended, and pursuant to 42 U.S.C. § 1981, as amended.

**ANSWER:**

Serfilco admits that Plaintiff purports to bring suit under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e *et seq.* and 42 U.S.C. § 1981, but denies that Plaintiff is entitled to relief under those statutes.

<u>PARTIES</u>

<u>PARAGRAPH NO. 2:</u>

Plaintiff Mr. Al-Khader is a Muslim male of Middle-Eastern origin and Arab ancestry. He presently resides at 1625 Elmwood Drive, in the City of Highland Park, County of Lake, State of Illinois.

<u>ANSWER:</u>

Upon information and belief, Serfilco admits the allegations of Paragraph 2.

<u>PARAGRAPH NO. 3:</u>

Defendant SERFILCO, LTD. (hereinafter "Serfilco") is an entity of Cook County doing business at, and maintaining its principal office at 2900 MacArthur Blvd. in the City of Northbrook, County of Cook, State of Illinois.

<u>ANSWER:</u>

Serfilco admits the allegations of Paragraph 3.

<u>PARAGRAPH NO. 4:</u>

Defendant employs 15 or more employees for each working day for 20 or more calendar weeks in the current or preceding calendar year.

<u>ANSWER:</u>

Serfilco admits the allegations in Paragraph 4.

<u>JURISDICTION AND VENUE</u>

<u>PARAGRAPH NO. 5:</u>

This Court has jurisdiction of this case pursuant to 42 U.S.C. §2000e *et seq.*, and 28 U.S.C. §§1331 and 1343.

<u>ANSWER:</u>

Serfilco neither admits nor denies the allegations of Paragraph 5 because they are legal conclusions and not the averment of issuable facts. Stating further, Serfilco does not dispute jurisdiction or venue.

**PARAGRAPH NO. 6:**

This action properly lies in this district pursuant to 28 U.S.C. §1391 because Defendants [sic] reside in this district and/or substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

**ANSWER:**

Serfilco admits it maintains a place of business in Northbrook, Illinois. Serfilco does not dispute venue, but it denies it discriminated against Al-Khader or violated any law. Serfilco denies the remaining allegations in Paragraph 6.

**PARAGRAPH NO. 7:**

On or about October 26, 2007, Plaintiff contacted the EEOC national call center. This call was placed within the 300 day statute of limitations for filing a complaint of discrimination with the EEOC.

**ANSWER:**

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 7 and therefore denies the same.

**PARAGRAPH NO. 8:**

Plaintiff provided details to the operator about his complaint including that he was told of his termination on January 3, 2007 but was paid until January 5, 2007. Plaintiff believed that by speaking to the operator he was filing a complaint and preserving the statute of limitations.

**ANSWER:**

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 8 and therefore denies the same.

**PARAGRAPH NO. 9:**

The EEOC operator tried to connect Plaintiff to the Chicago EEOC office but was unsuccessful. The operator told Plaintiff was told by the operator [sic] that within 48 hours a representative from the Chicago EEOC would contact him.

**ANSWER:**

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 9 and therefore denies the same.

**PARAGRAPH NO. 10:**

On or about October 29, 2007, Plaintiff was contacted by the Chicago EEOC office. This call was a day beyond the 48 hour time frame the EEOC had given Plaintiff.

**ANSWER:**

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 and therefore denies the same.

**PARAGRAPH NO. 11:**

Plaintiff did not go through an intake with the EEOC representative from Chicago. Plaintiff believed that the initial operator he had spoke to had passed along his information to the Chicago EEOC representative and was Chicago aware [sic] that the statute of limitations would run out by October 31, 2007 however Plaintiff believed he had satisfied his burden on October 26, 2007 when he made his initial complaint.

**ANSWER:**

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 and therefore denies the same.

**PARAGRAPH NO. 12:**

Plaintiff was told to attend an interview with the EEOC on November 1, 2007, which was 300 days after his last day of pay but 302 days after he received notice of termination. This error was made on the part of the EEOC not the Plaintiff.

**ANSWER:**

Serfilco admits that November 1, 2007 was 302 days after Al-Khader received notice of his termination. Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 12 and therefore denies the same.

**PARAGRAPH NO. 13:**

On or about November 1, 2007, Plaintiff attended his appointment with the EEOC and filed a Charge of Discrimination (Charge Number 440-2008-00649), based on nation origin and religion, with the Equal Employment Opportunity Commission ("EEOC").  A copy of the Charge of Discrimination is attached hereto as Exhibit A.

**ANSWER:**

Serfilco admits that Al-Khader filed the charge attached to the Amended Complaint as Exhibit A on or about November 1, 2007, with the Equal Employment Opportunity Commission.  Serfilco denies the allegations of discrimination contained in Exhibit A.  Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13 and therefore denies the same.

**PARAGRAPH NO. 14:**

Plaintiff was informed that he had filed his charge two days after the statutory deadline but would be issued a Notice of Right to Sue.  A copy of the Notice of Right to Sue is attached hereto as Exhibit B.

**ANSWER:**

Upon information and belief, Serfilco admits that Al-Khader received the Notice of Right to Sue attached as Exhibit B to the Amended Complaint.  Serfilco admits that according to the Notice of Right to Sue, Al-Khader's charge was dismissed by the EEOC as untimely. Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 14 and therefore denies the same.

**PARAGRAPH NO. 15:**

On or about November 16, 2007, Plaintiff received his Notice of Right to Sue from the EEOC for Charge 440-2008-00649.

**ANSWER:**

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 15 and therefore denies the same.

## COMMON ALLEGATIONS

**PARAGRAPH NO. 16:**

Mr. Al-Khader is a Muslin male of Arab ancestry and Middle-Eastern origin.

**ANSWER:**

Upon information and belief, Serfilco admits the allegations of Paragraph 16.

**PARAGRAPH NO. 17:**

In March 1995, Mr. Al-Khader was hired by Serfilco, a business that manufactures liquid handling equipment, as a designer in its engineering department.  He left Serfilco in September 1995 to pursue another work opportunity.

**ANSWER:**

Serfilco admits that it hired Al-Khader in March 1995, as a designer in its engineering department.  Serfilco further admits that it manufactures liquid handling equipment. Serfilco admits that Al-Khader left Serfilco in September 1995.  Serfilco lacks knowledge or information sufficient to form a belief as to the truth or the remaining allegations in Paragraph 17 and therefore denies the same.

**PARAGRAPH NO. 18:**

In October 1997, Mr. Al-Khader was rehired by Serfilco as a designer in Serfilco's engineering department.  This position involved designing products for Serfilco and reviewing and improving upon Serfilco's product line.

**ANSWER:**

Serfilco admits the allegations in Paragraph 18.

**PARAGRAPH NO. 19:**

While employed by Serfilco, Mr. Al-Khader performed his work satisfactorily and met Serfilco's expectations.  On his annual written evaluations, he received ratings of 4 ("excellent") and 5 ("exceptional") on a 5-point scale.

**ANSWER:**

Serfilco admits that Al-Khader received ratings of 4 ("excellent") and 5 ("exceptional") in his annual performance evaluations for the years 1998 through 2001.  Serfilco admits Al-Khader performed his work satisfactorily and met Serfilco's expectations.  Serfilco denies the remaining allegations of Paragraph 19.

**PARAGRAPH NO. 20:**

While employed by Serfilco, Mr. Al-Khader was constantly harassed by his coworker Greg Karlove, the department's IT manager, who directed racist remarks toward Mr. Al-Khader in public, while Mr. Al-Khader's other coworkers were present.  Karlove repeatedly told him to "go back to [his] country."

**ANSWER:**

Serfilco admits Greg Karlove held the position of IT Manager during the time Al-Khader was employed by Serfilco.  Serfilco denies the allegation that Al-Khader was constantly harassed by Karlove in that it calls for a legal conclusion.  The phrase "racist remarks" is vague and ambiguous; therefore Serfilco denies the same.  Serfilco denies that Karlove repeatedly told him to "go back to [his] country."  Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 20 and therefore denies the same.

**PARAGRAPH NO. 21:**

Mr. Al-Khader discussed Karlove's remarks with his supervisor, Mark Glodoski, on several occasions, and Glodoski attempted to resolve the situation by having Karlove apologize to Mr. Al-Khader.  Although his discriminatory remarks were always made in front of Mr. Al-Khader's coworkers, Karlove apologized to Mr. Al-Khader in private.

**ANSWER:**

Serfilco admits that on at least one occasion, in or around 2001, Karlove apologized to Al-Khader after the two had a disagreement. Serfilco denies that Karlove was forced to apologize to Al-Khader; rather the apology was made in an attempt to maintain a friendship between the two men. Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 21 and therefore denies the same.

**PARAGRAPH NO. 22:**

Sometime in 2001, Glodoski resigned from his position, and Stephen Wu became Mr. Al-Khader's new supervisor.

**ANSWER:**

Serfilco admits in November 2000, Glodoski resigned from his position and Stephen Wu became al-Khader's new supervisor.

**PARAGRAPH NO. 23:**

In the fall of 2001, sometime after Wu became his supervisor, Mr. Al-Khader found a stack of papers in Serfilco's cafeteria that referred to Arabs as "terrorists," "rag heads," and "camel jocks." Mr. Al-Khader took a copy to show to Jim Berg, who is one of Serfilco's owners and holds a management position with the company. Mr. Al-Khader told Berg that he found the papers very offensive; however, Berg simply stated that he did not "condone that" and walked away. No further action was taken on the matter. In addition, Karlove, who also saw the papers, told Mr. Al-Khader not to "rock the boat."

**ANSWER:**

Serfilco admits that Jim Berg holds a management position with the company. Sefilco denies that Jim Berg is one of Serfilco's owners. Serfilco denies the remaining allegations of Paragraph 23.

**PARAGRAPH NO. 24:**

On another occasion in 2006, employees in Serfilco's IT department played a video of the beheading of an American in Iraq, turning the volume up loud so that employees in the engineering department could hear the video. While the video was playing, Eric, a coworker

in the IT department, came and looked at Mr. Al-Khader, apparently waiting for a reaction from him.

**ANSWER:**

The phrase "came and looked at Mr. Al-Khader, apparently waiting for a reaction from him," is vague and ambiguous, therefore; Serfilco denies the same. Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 24 and therefore denies the same.

**PARAGRAPH NO. 25:**

On several occasions, the shop foreman at Serfilco, Ted Kopacz, made a Hitler salute at Mr. Al-Khader.

**ANSWER:**

Serfilco admits that Ted Kopacz has made traditional military salutes (raising right hand to his forehead) in a joking manner, accompanied by the words "yes sir," to Serfilco employees. The phrase "Hitler salute" is vague and ambiguous; therefore, Serfilco denies the same. Serfilco denies the remaining allegations in Paragraph 25.

**PARAGRAPH NO. 26:**

On at least a few occasions, a department manager at Serfilco, Larry Black, called Mr. Al-Khader a "camel jockey."

**ANSWER:**

Serfilco lacks information and knowledge sufficient to form a belief as to the truth of the allegations of Paragraph 26.

**PARAGRAPH NO. 27:**

On or about October 2006, Lillian Hutchins, the President's secretary at Serfilco, directed discriminatory remarks towards Mr. Al-Khader, telling him that he should shave his beard and that he looked "like a terrorist." Another coworker, Benjamin Leyva, also told Mr. Al-Khader that he looked like a terrorist.

**ANSWER:**

Serfilco admits that Lillian Hutchins is the President's administrative assistant at Serfilco, and that Benjamin Leyva worked with Al-Khader in the engineering department as a Computer Aided Drafting ("CAD") Operator. Serfilco denies Leyva told Al-Khader that he looked like a terrorist. The phrase "discriminatory remarks" is vague and ambiguous; therefore, Serfilco denies the same. Serfilco lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 27 and therefore denies the same.

**PARAGRAPH NO. 28:**

On or about October 2006, Karlove questioned Mr. Al-Khader regarding the Hamas group in the Middle East and why they were fighting the state of Israel. When Mr. Al-Khader attempted to explain the situation between Israel and the Palestinians, Karlove told Mr. Al-Khader that he hoped Israel would "nuke all of you." Wu was present and heard Karlove's statement.

**ANSWER:**

Serfilco admits that on or about October 2006, Karlove and Al-Khader had a discussion regarding Hamas, Israel and the peace process in the Middle East and that Al-Khader often initiated political discussions during work hours with his co-workers. Serfilco denies Karlove told Al-Khader that he hoped Israel would "nuke all of you" and that Wu was present during the discussion. Serfilco lacks knowledge and information sufficient to form a belief as to the truth of the remaining allegations of Paragraph 28 and therefore denies the same.

**PARAGRAPH NO. 29:**

Mr. Al-Khader complained about Karlove's discriminatory remarks to Wu several times. Wu informed Mr. Al-Khader that Karlove was "harmless" and "like Archie Bunker" and did not attempt to resolve the situation. Even when Wu personally witnessed Karlove's discriminatory remarks, as above, he took no action to reprimand Karlove.

**ANSWER:**

Serfilco admits that on occasion Al-Khader spoke with Wu regarding comments allegedly made to him by Karlove, and that Wu informed Al-Khader that he believed Karlove was "harmless" and "like Archie Bunker." Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 and therefore denies the same. Serfilco further affirmatively avers that Wu took Al-Khader's concerns seriously and attempted to resolve them while respecting Al-Khader's wishes on how he wanted Wu to handle the concerns, and that Wu told Al-Khader that he should also contact the human resources department if he continued to have concerns but Al-Khader never did so.

**PARAGRAPH NO. 30:**

In addition, Mr. Al-Khader noticed that everyone else with whom he shared a workroom, including the other designer, had internet access on their personal computers, while he did not. Internet access was necessary to carry out Mr. Al-Khader's job, which required researching parts online and communicating with vendors.

**ANSWER:**

Serfilco admits that with the exception of a several months in 2005, Al-Khader did not have internet access on his personal computer, and that two other employees had internet access on their personal computers. Serfilco denies that internet access was required for Al-Khader to carry out his job duties, and denies the remaining allegations in Paragraph 30.

**PARAGRAPH NO. 31:**

Furthermore, because he did not have regular email access, Mr. Al-Khader did not receive advance notice of trainings and seminars and was thus often unable to make arrangements to attend. Other employees, who received advance notice through emails, were able to attend these trainings.

**ANSWER:**

        Serfilco admits that the employees of the engineering department did not have

individual company email accounts.  Serfilco denies the remaining allegations in Paragraph 31.

**PARAGRAPH NO. 32:**

        When Mr. Al-Khader asked Karlove, who was the IT manager, for internet access
of his own computer, Karlove responded, laughing, "So you can write Osama bin Laden?"

**ANSWER:**

        Serfilco denies the allegations in Paragraph 32.

**PARAGRAPH NO. 33:**

        On several occasions, Mr. Al-Khader spoke to Wu about not having internet
access on his computer, and Wu told Mr. Al-Khader that Karlove, as IT manager, had control
over the matter.  Finally, in summer 2006, Mr. Al-Khader suggested to Wu that he, as supervisor,
should have control over the matter.  Wu then asked Mr. Al-Khader, "Do you like working
here?" and stated that Mr. Al-Khader did not need internet access on his computer.

**ANSWER:**

        Serfilco admits that on several occasions Al-Khader spoke to Wu about not

having internet access on his computer, and that Wu inquired whether Al-Khader enjoyed

working for Serfilco.  Serfilco denies the remaining allegations in Paragraph 33.

**PARAGRAPH NO. 34:**

        Mr. Al-Khader also noticed at this time that, although he submitted his projects by
their deadlines, Wu postponed reviewing these projects and did not check them off as completed
until he had approved them.  When Mr. Al-Khader checked the status of his projects, they
appeared as "overdue."

**ANSWER:**

        The phrase "at this time" is vague and ambiguous; therefore Serfilco denies the

same.  Serfilco admits that Wu created and maintained a personal spreadsheet to keep track of all

of the projects in the engineering department, and that if a project was not reviewed by Wu by

the deadline set by Wu, it would be recorded as "overdue."  Serfilco denies the remaining

allegations in Paragraph 34.  Answering further, Serfilco affirmatively avers that this spreadsheet

was an organizational tool for Wu and was not used as a tool to evaluate employees'

performances.

## PARAGRAPH NO. 35:

In August 2006, Mr. Al-Khader received a written evaluation of his work that was
less positive than the evaluations he had received in the past.  However, the evaluation still
indicated that Mr. Al-Khader had achieved job requirements and did not contain any assertions
that Mr. Al-Khader was not meeting Serfilco's expectations.

## ANSWER:

Serfilco admits that Al-Khader received the rating of "Achieved Job

Requirements" in his annual performance review issued in August 2006.  Serfilco denies the

remaining allegations in Paragraph 35.  Answering further, Serfilco affirmatively avers that no

formal evaluations were conducted on the employees in the engineering department from 2002 to

2005, and that the pre-2002 annual review format used different criteria and performance ratings

than the 2006 review.

## PARAGRAPH NO. 36:

On or about early September 2006, Mr. Al-Khader met with Serfilco's human
resources manager, Sue Vollmer, to discuss the annual review and the unequal treatment he
faced.  At this time, because he feared negative consequences, he did not state his belief that the
unequal treatment was due to discrimination against his national origin and/or religion, nor did
he complain about his coworker's racist remarks.  Vollmer asked Mr. Al-Khader to put his
complaint in writing.

## ANSWER:

Serfilco admits that on or about early September 2006, Al-Khader met with

Human Resources Manager Sue Vollmer and complained that his annual review was not fair,

that Al-Khader did not make any allegations of discrimination, and that Vollmer told Al-Khader

to put his complaints regarding his annual performance review in writing.  Serfilco lacks

knowledge or information sufficient to form a belief as to the truth of the remaining allegations

in Paragraph 36 and therefore denies the same.

**PARAGRAPH NO. 37:**

        In September 2006, Mr. Al-Khader filed a written complaint with Sue Vollmer
but, because he feared negative consequences, did not state his belief that the treatment was due
to discrimination or include his coworkers' discriminatory remarks in the complaint.

**ANSWER:**

        Serfilco admits that in September 2006, Al-Khader filed a written response to his

annual performance review with Vollmer, and that the response did not contain any allegations

of discrimination or any alleged discriminatory remarks made by other Serfilco employees.

Serfilco lacks knowledge or information sufficient to form a belief as to the truth of the

remaining allegations of Paragraph 37 and therefore denies the same.

**PARAGRAPH NO. 38:**

        On or about October 18, 2006, Mr. Al-Khader asked Vollmer to deliver to Wu a
letter he had written outlining his main concerns: lack of access to internet as well as to software
programs that he had previously used in his work but were no longer installed on his computer.
In this letter, Mr. Al-Khader explained why internet access and these programs were necessary
for his work.

**ANSWER:**

        Serfilco admits that on or about October 18, 2006, Al-Khader asked Vollmer to

deliver to Wu a letter he had written, allegedly outlining his main concerns: lack of access to the

internet as well as to software programs he had previously used in his work but were no longer

installed on his computer.  Serfilco further admits that in the letter, Al-Khader attempted to

explain why he believed internet access and the programs listed in his letter were necessary for

his work.  Serfilco denies that access to the internet and the programs listed in his letter were

necessary for him to perform his job and denies the remaining allegations of Paragraph 38.

## PARAGRAPH NO. 39:

On or about October 24, 2006, Wu responded to Mr. Al-Khader's letter but did not fully resolve the issues Mr. Al-Khader raised.  Rather than provide Mr. Al-Khader with internet access on his own computer, Wu stated that a common computer with internet access would be provided for his use.

## ANSWER:

Serfilco admits that on or about October 24, 2006, Wu responded to Al-Khader's

October 16th letter and that Wu did not provide Al-Khader with internet access on his own

computer but stated a common computer with internet access would be provided for Al-Khader's

use.  Serfilco denies the remaining allegations of Paragraph 39.

## PARAGRAPH NO. 40:

On or about late October 2006 or early November 2006, Mr. Al-Khader met with Vollmer for a second time.  At this time, he stated his belief that he was being discriminated against due to his national origin and religion.  In addition, Mr. Al-Khader told Vollmer that several co-workers, throughout the years, had made numerous insensitive and racist remarks and that Wu had dismissed these remarks as "harmless."  Mr. Al-Khader told Vollmer that he had not brought this up before because he did not want to make it into a big problem, but that it was affecting his work.  Mr. Al-Khader asked Vollmer not to directly confront any of his co-workers and stated that he would instead prefer that Serfilco hold a sensitivity training for its employees or distribute a memorandum regarding appropriate work behavior.

## ANSWER:

Serfilco admits that in or about late October 2006 or early November 2006, Al-

Khader met with Vollmer, admits that Al-Khader told Vollmer that he was upset, during the

meeting Al-Khader complained about alleged national origin and religious discrimination but

would not cite specific examples of acts he believed were discriminatory.  Serfilco further admits

that Al-Khader asked Vollmer not to directly confront any of his co-workers and stated that he

would instead prefer that Serfilco hold a sensitivity training for its employees or distribute a

memorandum regarding appropriate work behavior, and that Vollmer told Al-Khader that if he believed he was being discriminated against in some way, his claims would be investigated, however, if he was unwilling or unable to tell Vollmer his specific allegations, he would need to submit them in writing so she knew where to begin the investigation. Serfilco denies the remaining allegations in Paragraph 40.

**PARAGRAPH NO. 41:**

Following Mr. Al-Khader's second meeting with Vollmer, Vollmer scheduled a meeting between Mr. Al-Khader, Wu, and Wu's manager that was to take place on January 4, 2007. Mr. Al-Khader noticed that Wu was treating him coldly. He therefore believes that Vollmer communicated his statements regarding discrimination to Wu.

**ANSWER:**

Serfilco admits that Vollmer scheduled a meeting between Al-Khader, Wu, and Mike Berg, that was to take place on January 4, 2007. Serfilco denies that Wu treated Al-Khader in any way differently after the January 4, 2007 meeting was scheduled. Serfilco lacks sufficient knowledge and information to form a belief as the truth of the remaining allegations of Paragraph 41 and therefore denies the same.

**PARAGRAPH NO. 42:**

On or about January 3, 2007, Mr. Al-Khader was called into a meeting with Vollmer and Wu. Wu informed Mr. Al-Khader that "the position" was being eliminated and that he was therefore terminated. Mr. Al-Khader asked if his co-worker Tomasz Rebidasz, who held the same designer position and who was on vacation at the time, was terminated as well. Wu and Vollmer stated that Rebidasz was also terminated and would be notified over the phone.

**ANSWER:**

Serfilco admits the allegations of Paragraph 42.

**PARAGRAPH NO. 43:**

Upon information and belief, however, Rebidasz, who is neither Arab nor Muslim, returned to work at Serfilco after his vacation and remained employed in the same position.

**ANSWER:**

Serfilco admits that Rebidasz is neither Arab nor Muslim.  Serfilco denies the

remaining allegations of Paragraph 43.

**PARAGRAPH NO. 44:**

Mr. Al-Khader was at least as, if not more, qualified as Rebidasz.  Mr. Al-Khader
had seniority over Rebidasz at Serfilco.  Like Rebidasz, Mr. Al-Khader had earned an associates
degree in Mechanical Design.  Moreover, Mr. Al-Khader possessed technical and computer
skills that Rebidasz did not have, such as experience with sheet metal work, as well as
experience with software programs such as Adobe Photoshop and Microsoft Visio.  Despite this,
Rebidasz retained his job while Mr. Al-Khader did not.

**ANSWER:**

Serfilco admits that Al-Khader had worked at Serfilco longer than Rebidasz, and

that both Al-Khader and Rebidasz both had associates degrees in mechanical design.  Serfilco

denies the remaining allegations in Paragraph 44.

**COUNT I**
**Title VII – Alleged Race, Color, Religion and National Origin Discrimination and**
**Harassment, and Retaliation**

**PARAGRAPH NO. 45**

Paragraphs 1 through 44 are restated herein.

**ANSWER:**

Serfilco incorporates by reference its answers to Paragraphs 1 through 44 as

though fully set forth herein.

**PARAGRAPH NO. 46:**

Defendant intentionally discriminated against Mr. Al-Khader by creating an
intimidating, hostile and offensive work environment for Mr. Al-Khader and illegally
terminating Mr. Al-Khader in violation of 42 U.S.C. §2000e *et seq.*, as amended.

**ANSWER:**

      Serfilco denies the allegations of Paragraph 46.

**PARAGRAPH NO. 47:**

      Defendant retaliated against Mr. Al-Khader for complaining of discrimination or harassment, in violation of 42 U.S.C. §2000e *et seq.*, as amended.

**ANSWER:**

      Serfilco denies the allegations of Paragraph 47.

**PARAGRAPH NO. 48:**

      Defendants' unlawful actions have caused Mr. Al-Khader emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

**ANSWER:**

      Serfilco denies the allegations of Paragraph 48.

## COUNT II

### (Section 1981 – Alleged Race and Ancestry Discrimination and Retaliation)

**PARAGRAPH NO. 49:**

      Paragraphs 1- 44 are restated herein as though fully set forth herein.

**ANSWER:**

      Serfilco incorporates by reference its answers to Paragraphs 1 through 44.

**PARAGRAPH NO. 50:**

      Defendant intentionally discriminated against Plaintiff on the basis of race and ancestry in violation of 42 U.S.C. § 1981, as amended.

**ANSWER:**

      Serfilco denies the allegations of Paragraph 50.

**PARAGRAPH NO. 51:**

       Defendant, in violation of 42 U.S.C. § 1981, as amended, retaliated against Plaintiff for complaining of discrimination on the basis of race and ancestry.

**ANSWER:**

       Serfilco denies the allegations in Paragraph 51.

**PARAGRAPH NO. 52:**

       Defendant's unlawful actions have caused Plaintiff emotional distress, inconvenience, lost wages and benefits, and other consequential damages.

**ANSWER:**

       Serfilco denies the allegations of Paragraph 52.

**JURY TRIAL**

**PARAGRAPH NO. 53:**

       Plaintiff demands that the case be tried by a jury.

**ANSWER:**

       Serfilco admits that Plaintiff is requesting a jury trial.

**AFFIRMATIVE DEFENSES**

       For its affirmative defenses to Al-Khader's Amended Complaint, Serfilco alleges:

1.    Plaintiff failed exhaust his administrative remedies by failing to timely file his discrimination charge with the EEOC, therefore he is barred from brining a lawsuit under Title VII.

2.    To the extent Plaintiff claims discrimination which occurred more than 300 days before he filed his charge of discrimination with the EEOC, such claims are time-barred.

3.    Plaintiff's claims for damages in the form of backpay and benefits are barred by Plaintiff's failure to diligently seek other employment or otherwise mitigate his damages.

4.      Plaintiff's claim for harassment is barred and any recovery of damages is precluded because (i) Serfilco exercised reasonable care to prevent and correct promptly any alleged harassing behavior and (ii) Plaintiff unreasonably failed to take advantage of the Serfilco's preventative or corrective opportunities or to avoid harm otherwise.

5.      Plaintiff's claims of harassment, discrimination, and retaliation are barred by the doctrine of laches inasmuch as Plaintiff unreasonably delayed in asserting his claims, thereby prejudicing Defendant in its defense of this action.

6.      Serfilco engaged in good faith efforts to comply with Title VII of the Civil Rights Act of 1964, and therefore cannot be held liable for punitive damage.

7.      Assuming, *arguendo*, that Plaintiff if able to establish that his race, national origin, ancestry, or religion played any part in any decisions of which he complains in his Amended Complaint, Serfilco would have made the same decision even in the absence of any unlawful consideration.

8.      Serfilco's employment decisions concerning Plaintiff were based upon legitimate, non-retaliatory factors unrelated to any alleged exercise of Plaintiff's rights under the law.

9.      Serfilco reserves the right to plead any additional Affirmative Defenses as they become known or available during this litigation.

Dated:  May 16, 2008                    Respectfully submitted,

                                        **SERFILCO, LTD.**

                              By:     /s/Ernst H. Ostrand
                                      One of Its Attorneys

Cathryn Albrecht
albrechc@jacksonlewis.com
Ernst H. Ostrand
ostrande@jacksonlewis.com
Jackson Lewis LLP
320 W. Ohio Street, Suite 500
Chicago, IL  60610
(312) 787-4949 Phone
(312) 787-4995 Fax

## **CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that on this 16th day of May, 2008, he/she caused a true and correct copy of the foregoing Defendant's Answer and Affirmative Defenses to Plaintiff's Amended Complaint to be filed with the Court by electronic filing protocols, and that same will therefore be electronically served upon all attorneys of record registered with the Court's ECF/CM system, including:

Patricia Kemling, Esq.
Council on American-Islamic Relations
28 East Jackson Boulevard, Suite 1410
Chicago, IL  60604


/s/Ernst H. Ostrand

Cathryn Albrecht
albrechc@jacksonlewis.com
Ernst H. Ostrand
ostrande@jacksonlewis.com
Jackson Lewis LLP
320 W. Ohio Street, Suite 500
Chicago, IL  60610
(312) 787-4949 Phone
(312) 787-4995 Fax

22